IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MICHEL E. YANNI,**

    Petitioner,

  v.

**WARDEN, OHIO DEPARTMENT
OF REHABILITATION AND CORRECTION,
CORECTIONAL RECEPTION CENTER,**

    Respondent.

CASE NO. 2:21-CV-4172
Chief Judge Algenon L. Marbley
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and this Court's General Order 22–05. Pending before the Court are the Petition and Petitioner's Memorandum in support of the same (Docs. 1, 2); Respondent's Answer/Return of Writ (Doc. 7); Petitioner's Reply (Doc. 10); and the state court record. For the reasons that follow, it is **RECOMMENDED** that Petition be **DENIED** and that this action be **DISMISSED**.

### I. PROCEDURAL HISTORY

The Court of Appeals for Ohio's Fifth District summarized the relevant procedural history of this case as follows:

> {¶2} On November 8, 2018, the Muskingum County Grand Jury indicted appellant on one count of trafficking in drugs (methamphetamine) in violation of R.C. 2925.03(A)(1), a felony of the first degree, and one count of permitting drug abuse in violation of R.C. 2925.13(A), a felony of the fifth degree. The indictment also contained a major drug offender specification. At his arraignment on November 14, 2018, appellant entered a plea of not guilty to the charges.

{¶3} Subsequently, a jury trial commenced on April 4, 2019. The following testimony was adduced at trial.

{¶4} Detective Matt Wilhite of the Muskingum County Sheriff's Office testified that he was assigned to the Central Ohio Drug Enforcement Task Force. Wilhite testified that a confidential informant (C.I.) gave him information about two targets that he "could assist with during the investigation, and could buy pound quantities of methamphetamine and possibly kilo quantities of cocaine." Trial Transcript at 69. One of the targets was appellant. He testified that the C.I. informed law enforcement that he could arrange to purchase eight to ten pounds of methamphetamine from appellant in Muskingum County.

{¶5} On October 30, 2018, law enforcement and the C.I. arranged for a controlled buy of narcotics from appellant. The C.I. was wired and provided with $4,500.00 in prerecorded cash. The C.I. met appellant in the Dollar General parking lot in Gratiot, Ohio. There was testimony that the C.I. pulled in the parking spot next to appellant and got into the front seat of appellant's vehicle. After a conversation about money, the C.I. asked appellant "where it's at" and appellant indicated that it was in the trunk. Trial Transcript at 92. The C.I. then got into the trunk for a short period of time, shut the trunk and then walked back over to appellant's vehicle and said goodbye. The C.I. then got back into his own vehicle. Wilhite testified that he observed that the C.I. had a large white object in his hand.

{¶6} Appellant then proceeded west on State Route 40. Wilhite testified that he made contact with the C.I. and made sure that the transaction had been completed and that he advised other detectives that appellant was heading west on State Route 40. He testified that he recovered the drugs from the C.I.'s vehicle in a plastic Wal-Mart bag. Law enforcement initiated a traffic stop of appellant's vehicle and located the $4,500.00 in buy money in appellant's vehicle. An undercover video of the controlled buy was played at trial for the jury.

{¶7} After appellant was placed under arrest, DEA agents conducted a search of his Columbus residence. Vacuum sealed bags, which are used to package drugs, pay-owe sheets, which are ledgers used to keep track of money someone would owe versus the amount of drugs sold, digital scales and three cell phones were located. Detective Wilhite testified that these items were commonly used by drug dealers to keep track of drug sales.

{¶8} Appellant testified at trial in his own defense. He testified that he began to sell marijuana due to his financial issues and testified that the items recovered from the search of his Columbus residence, including ledgers, were from his marijuana selling business. He denied ever dealing methamphetamine. Appellant testified that he was in business with the C.I. and that he would front the C.I. marijuana and the C.I. would then repay him as it was sold.

{¶9} On cross-examination, appellant admitted to dealing drugs for a long time

2

. . . .

{¶38} At the conclusion of the evidence, appellee dismissed the permitting drug abuse charge. During closing argument, appellee stated, in relevant part, that "[i]n this case, [appellant] knew he was selling meth. It was his profession. Sells drugs, sells meth, sells weed. Does this every day." Trial Transcript at 396-397. The prosecutor further argued as follows:

{¶39} You don't get at this level of the game without being very smart, okay. And while some people think, oh, you know, somebody's just dealing a little weed. When you are dealing in hundreds of thousands of dollars in weed - - this is not like medical marijuana. This is, I am a drug dealer. This is my profession. Whatever commodity, drug dealing is the profession at that level.

{¶40} Trial Transcript at 406.

{¶41} At the conclusion of the evidence and the end of deliberations, the jury, on April 5, 2019, found appellant guilty of trafficking in drugs (methamphetamine) and the major drug offender specification. As memorialized in an Entry filed on May 9, 2019, appellant was sentenced to eleven (11) years in prison and fined $20,000.00.

*State v. Yanni*, No. CT2019-0050, 2020 WL 1686250, *1–2 (Ohio Ct. App. April 6, 2020).

Petitioner subsequently filed an appeal and raised the following three assignments of error.

{¶43} "I. THE TRIAL COURT ERRED BY PERMITTING THE STATE TO ELICIT TESTIMONY FROM APPELLANT REGARDING AN UNRELATED PENDING CRIMINAL INDICTMENT IN FRANKLIN COUNTY, OHIO IN VIOLATION OF APPELLANT'S RIGHTS AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATED CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."

{¶44} "II. THE TRIAL COURT ERRED BY PERMITTING THE INTRODUCTION OF UNFAIRLY PREJUDICIAL AND IRRELEVANT EVIDENCE IN VIOLATION OF THE OHIO RULES OF EVIDENCE AND APPELLANT'S RIGHTS AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS."

{¶45} "III. THE PROSECUTOR'S REMARKS REGARDING APPELLANT'S PENDING CRIMINAL INDICTMENT IN FRANKLIN COUNTY, OHIO CONSTITUTED PROSECUTORIAL MISCONDUCT IN VIOLATION OF

  APPELLANT'S RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

*Id*. at *3. On April 6, 2020, the state appellate court overruled all three assignments of error and affirmed the state trial court's judgment. *Id*. at *5, 6.

Petitioner sought an appeal in the Ohio Supreme Court. (Doc. 6, PageID # 191.) In his Ohio Supreme Court filings, Petitioner raised one issue: "Defense counsel opening the door on a particular issue does not deprive a defendant of his Fifth Amendment right to remain silent." (*Id*., PageID # 210, 214–18.) The Ohio Supreme Court declined to accept jurisdiction over Petitioner's appeal, however, on August 18, 2020. (*Id*., PageID # 228.)

On August 31, 2021, Petitioner, with the assistance of counsel, sought a writ of habeas corpus pursuant to 28 U.S.C § 2254. (Doc. 1.) In his petition, he raises the following ground for relief:

> **GROUND ONE:** The trial court erred when it permitted inquiry by the State during petitioner's cross-examination of an unrelated pending criminal indictment in violation of Petitioner's Fifth and Fourteenth Amendment Rights.

(*Id*., PageID # 5.)

## II. STANDARD OF REVIEW

The Sixth Circuit Court of Appeals recently discussed the appropriate standard of review for habeas claims brought by state prisoners in *Stermer v. Warren,* 959 F.3d 704, 720–722 (6th Cir. 2020). "Petitions for habeas corpus brought by state prisoners are subject to 28 U.S.C. § 2254, the modern version of which comes from the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")." *Id*. at 720 (citing *Northrop v. Trippett*, 265 F.3d 372, 376 (6th Cir. 2001); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999)). "AEDPA requires habeas petitioners to exhaust their claims in state court before turning to a federal court for

relief." *Id*. (citing 28 U.S.C. § 2254(b)(1)). "And if a state court decides a claim on the merits, that decision is subject to significant deference." *Id.* (citations omitted).

"For a federal court to grant relief in such a case, the state court's decision must have been '(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id*. at 720–721 (quoting 28 U.S.C. § 2254(d)). "Under these rules, a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 721 (citations and internal quotation marks omitted). "This deference applies even when the state court fails to explain its reasoning, in which case 'the federal court 'must determine what arguments or theories . . . could have supported the state court's decision'" and afford those theories AEDPA deference." *Id*. (quoting *Sexton v. Beaudreaux*, ––– U.S. –––, 138 S. Ct. 2555, 2558, 201 L.Ed.2d 986 (2018) (per curiam) (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102, (2011)). "Furthermore, 'evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Id.* (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

"Section 2254(d) also determines which facts a federal court can consider." *Id*. "When assessing whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law,' 28 U.S.C. § 2254(d)(1), the reviewing court 'is limited to the record that was before the state court that adjudicated the claims on the merits [.]' " *Id*. (quoting *Cullen v. Pinholster,* 563 U.S. 170, 181, (2011)). "Because of this, a district court

5

cannot use a federal evidentiary hearing to supplement the record when assessing a claim under § 2254(d)." *Id*. (citing *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 465 (6th Cir. 2012)). "That said, if a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Id*. (citations omitted).

"If a habeas petitioner satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies." *Id*. "Instead, the petitioner's claim is reviewed de novo as it would be on direct appeal." *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)). "The district court would also be free to expand the record, provided that the petitioner diligently attempted to present those facts in state court (or alternatively if [he] meets AEDPA's narrow exception for evidence of actual innocence)." *Id*. at 721–722 (citations omitted).

### III. ANALYSIS

Petitioner asserts that he is entitled to habeas relief because the trial court allowed the prosecution to cross examine him about an indictment in a different county for marijuana sales even though his lawyer objected on Fifth Amendment grounds. Respondent urges that this claim lacks merit. The undersigned agrees.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This provision guarantees a criminal defendant the right to remain silent during his criminal trial and prevents the prosecution from commenting on his silence when he exercises that right. *See Griffin v. California,* 380 U.S. 609, 614 (1965). A criminal defendant also has a concomitant right to testify in his own

defense. *See Rock v. Arkansas,* 483 U.S. 44, 52–53 (1987) (citing *Harris v. New York*, 401 U.S. 222, 230 (1971)). But once a defendant chooses to testify in his own defense, he cannot raise the privilege against self-incrimination as a barrier against proper cross-examination. *See Brown v. United States*, 356 U.S. 148, 154-55 (1958) (noting that a criminal defendant who "takes the stand and testifies in his own defense . . . may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination"). Here, Petitioner appears to complain that the state appellate court wrongly determined that the scope of the prosecution's cross-examination questions was proper.

The state appellate court began its analysis of Petitioner's Fifth Amendment claim by discussing Petitioner's direct examination testimony about his marijuana dealing activities. The state appellate court wrote as follows:

> {¶47} Appellant, as is stated above, testified at trial in his own defense. Appellant testified that he became involved in drug dealing after he was released from incarceration after being convicted of bank fraud. He testified that he began dealing marijuana due to financial problems and that he started out small, but it did not take long for him to sell larger quantities. Appellant also admitted that the items recovered from his residence were accounts of his marijuana business. Appellant testified that the ledger taken by law enforcement was for a brand called "Blue Dream" which was a high-grade marijuana. Trial Transcript at 330. Appellant, when asked, denied ever dealing methamphetamines and testified that he and the C.I. started engaging in marijuana trafficking together and were partners. According to appellant, he would front the C.I. the marijuana and the C.I. would repay appellant as he sold the same.
>
> {¶48} Appellant stated that days before his arrest, he supplied the C.I. with six pounds of high grade marijuana worth $3,000.00 a pound, for a total of $18,000.00 . . . , the following is an excerpt from appellant's trial testimony:
>
>> {¶49} [PETITIONER]: When I receive my product they're always, always going to be in a bag that's placed in another bag, both bags are sealed; the first bag being sealed, and the second bag being

7

> sealed. To open that bag, I have to cut open the top of the bag to get to the original bag. And as you can see on this particular one - -
>
> {¶50} [DEFENSE COUNSEL]: Which one, sir?
>
> {¶51} [PETITIONER]: This one with the writing on it. There's letter on here, SF OG. OG is a brand of high-grade marijuana. SF is a - - it's almost like - - like you have Land Rover and then Range Rover, the make and the model. The make - - or the - - yeah, the make is the OG, the model is the SF. And this is where - - this is - -
>
> {¶52} [DEFENSE COUNSEL]: So that's - -
>
> {¶53} [PETITIONER]: - - exactly what that is.
>
> {¶54} [DEFENSE COUNSEL]: - - that's a marijuana designation; correct?
>
> {¶55} [PETITIONER]: Yes. Yes.
>
> {¶56} [DEFENSE COUNSEL]: Do these have anything to do with crystal methamphetamine?
>
> {¶57} [PETITIONER]: Absolutely not.
>
> {¶58} Trial Transcript at 335.

*Yanni*, 2020 WL 1686250, at *3–4.

The state appellate court next discussed the prosecution's cross-examination of Petitioner, including questions posed by the prosecution about Petitioner's possession of marijuana that had led to an indictment against him in another county for marijuana dealing and to which Petitioner's lawyer objected on relevancy and Fifth Amendment grounds. The state appellate court wrote:

> {¶59} After appellant testified, the following testimony was elicited on cross-examination:
>
> > {¶60} [THE PROSECUTION]: So you've been dealing drugs for a long time?
> >
> > {¶61} [PETITIONER]: Yes.

8

{¶62} [THE PROSECUTION]: At least since you got out of prison on the bank fraud?

{¶63} [PETITIONER]: Yes.

{¶64} [THE PROSECUTION]: You want these people to believe you're just a weed dealer; right?

{¶65} [PETITIONER]: Absolutely, because it's the truth.

{¶66} [THE PROSECUTION]: Okay. Now, in 2016, you got caught in Columbus with 100 pounds of weed; right?

{¶67} [PETITIONER]: Yes, I did.

{¶68} [THE PROSECUTION]: And you were a fugitive since then?

{¶69} [PETITIONER]: Yes, yes. I have –

{¶70} [THE PROSECUTION]: Now, was that good weed, or was that ditch weed?

{¶71} [DEFENSE COUNSEL]: Object; relevancy, Your Honor.

{¶72} THE COURT: Overruled. It's cross-examination.

{¶73} [THE PROSECUTION]: Was it good weed, or was it just - -

{¶74} [PETITIONER]: The hundred pounds that I was caught with was what you call a middle-grade weed. It's between - -

{¶75} [DEFENSE COUNSEL]: Your Honor, again, I'm just going to object. He has a Fifth Amendment right. That case is pending. And I'm just going to put on the record - -

{¶76} THE COURT: I had no idea this case was pending.

{¶77} [DEFENSE COUNSEL]: Oh. Well, that was part of the question. But it is pending, he does have a Fifth Amendment right. I still don't see the relevancy of that indictment to this case. But just want to make the record clear.

{¶78} THE COURT: Overruled. Go ahead.

{¶79} [THE PROSECUTION]: You said it was mid-grade weed?

{¶80} [PETITIONER]: Yes.

{¶81} [THE PROSECUTION]: So, generally, you spoke about this high-grade weed being worth $3,000 a pound.
{¶82} [PETITIONER]: Yes.

{¶83} [THE PROSECUTION]: So if it was high-grade weed, that would be $300,000 worth of weed. At the border, directly from cartel, brick-packed, Mexican ditch weed is $300 a pound; right?

{¶84} [PETITIONER]: No.

{¶85} [THE PROSECUTION]: I mean, that's - - that's pound for the cheapest dirt weed you can get, from the best price you can get.

{¶86} [PETITIONER]: Well, unfortunately, I don't know about the dirt weed because I don't deal with the dirt weed. As far as marijuana, I deal with mid grade up to high grade and that's it.

{¶87} [THE PROSECUTION]: Okay. So you get caught with, what, $100,000 worth of weed?

{¶88} [PETITIONER]: Yes. Approximately.

{¶89} Trial Transcript at 360–362.

*Id*. at *4.

The state appellate court then described and evaluated Petitioner's Fifth Amendment claim. It wrote:

{¶90} Appellant now contends that the trial court erred by allowing the State to elicit testimony on cross-examination from appellant regarding his unrelated pending criminal indictment in Franklin County, Ohio. We note that appellant's counsel objected to such questioning, arguing that it was irrelevant and that appellant had a Fifth Amendment right against self-incrimination.

{¶91} We note, however, that trial counsel never instructed appellant not to answer and that appellant never asserted his Fifth Amendment right against self-incrimination. *Moreover, appellant, via his own testimony that he was a small time drug dealer, opened the door to questioning about his drug trafficking. As noted by appellee, appellant "cannot voluntarily testify in great detail on direct examination about marijuana trafficking and then attempt to limit the State's questioning as to the exact same matter."* Furthermore, assuming, arguendo, that it was error to allow

10

  such evidence, we cannot say that appellant was prejudiced in any manner based on the evidence regarding the buy made by the C.I. and that fact that appellant admitted being a drug dealer. There was overwhelming evidence of appellant's guilt and any error was harmless beyond a reasonable doubt.

  {¶92} Appellant's first and second assignments of error are, therefore, overruled.

*Id*. at *4–5. (emphasis added)

  As the discussion above illustrates, the state appellate court determined that Petitioner testified on direct examination that he was a small-time marijuana dealer. *Id*. at * 4. The undersigned finds that is an accurate assessment of Petitioner's direct examination testimony. Petitioner testified during his direct examination that he started out as a seller of small quantities of marijuana, but before too long, began selling more than small quantities of that substance. (Doc. 6, PageID # 234.) During direct, Petitioner also identified items recovered from his residence as ones that had used to keep "accounts" of his marijuana business, including sales of a high-grade type of marijuana called Blue Dream. (*Id*., at PageID # 235.) Petitioner further testified on direct examination that those account-keeping items included references to a confidential informant and that his phone records would reflect calls between him and that confidential informant but that he and the confidential informants did not deal in methamphetamines together. (*Id*., at PageID # 235–36.) Petitioner additionally testified on direct examination that he and the confidential informant were business partners that engaged in marijuana trafficking. (*Id*., at PageID # 237.) Petitioner indicated on direct examination that on more than one occasion, he had "fronted" marijuana to the confidential informant, and the confidential informant repaid Petitioner for the marijuana that had been fronted to him as the confidential informant sold it. (*Id*., at PageID # 237–38.) Based on this direct examination testimony, the state appellate court determined that Petitioner had "opened the door" (*i.e.*, waived his Fifth Amendment privilege) to questions on cross-examination about the scope and

11

details of his marijuana trafficking, including the prosecution's questions about Petitioner's possession of marijuana that had led to an indictment in a different county. *Yanni*, 2020 WL 1686250, at *4.

Petitioner urges that the cross-examination questions were impermissible because even though he testified on direct examination about his marijuana sales and his relationship with the confidential informant, he never testified on direct examination about any pending criminal charges. (Doc. 2, PageID # 22.) As the United States Supreme Court has explained, however, once a defendant decides to testify, "[t]he interest of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining scope and limits of the privilege against self-incrimination." *Brown*, 356 U.S. at 156)). Indeed, a criminal defendant "has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts." *Id*. (quoting *Fitzpatrick v. United States*, 178 U.S. 304, 315 (1900)). *See also*, *Mitchell v. United States*, 526 U.S. 314, 321 (1999) (citing *Rogers v. United States*, 340 U.S. 367, 373 (1951) ("a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details.")) For that reason, "[A] defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination." *McGautha v. California*, 402 U.S. 183, 215 (1971), *overruled on other grounds*, *Furman v. Georgia*, 408 U.S. 238, 247 (1972).

Given these precepts, the undersigned finds that it was reasonable for the state appellate court to conclude that the prosecution's cross-examination questions were reasonably related to Petitioner's direct examination testimony that he trafficked in marijuana. Petitioner testified at

12

length on direct examination about selling marijuana. The prosecution's cross-examination questions were directly related to the amount, quality, and street value of marijuana that Petitioner had possessed and dealt. The prosecution's questions never strayed from the subject of Petitioner's testimony about his marijuana dealing. Accordingly, it was reasonable for the state appellate court to find that by testifying about selling marijuana, the scope of Petitioner's waiver of his right against self-incrimination extended to these marijuana dealing-related questions.

In his Reply, Petitioner also appears to assert that the state appellate court erred by finding that he waived his Fifth Amendment right because counsel objected to the prosecution's questions, and that his counsel was unable to raise a Fifth Amendment self-incrimination objection on Petitioner's behalf. (ECF No. 10, PageID # 310–14.) In support, Petitioner cites several cases, including a Fifth Circuit case that was subsequently overruled by the Supreme Court in *Fisher v. United States*, which determined that taxpayers' Fifth Amendment privilege would not be violated by enforcement of a summons for the production of documents possessed by the taxpayers' accountants/lawyers. (*Id*., at PageID # 310) (citing *United States v. Kasmir*, 499 F.2d 444 (5th Cir. 1974), *overruled by Fisher v. United States*, 425 U.S. 391, 396–97 (1976)).

The undersigned is not convinced, however, that the state appellate court affirmed the state trial court because it determined that counsel was unable to raise a Fifth Amendment objection on Petitioner's behalf. As the excerpt above demonstrates, the state appellate court expressly noted that Petitioner's "counsel objected to such questioning, arguing that it was irrelevant and that appellant had a Fifth Amendment right against self-incrimination." *Yanni*, 2020 WL 1686250, at *4. The state appellate court then noted that counsel failed to instruct

13

Petitioner not to answer the questions, and that Petitioner did not assert the Fifth Amendment. *Id*. But the state appellate court then went on to find that "[Petitioner], via his own testimony that he was a small time drug dealer, opened the door to questioning about his drug trafficking." *Id*. The undersigned finds that this was the state appellate court's crucial determination. And as already explained, it was a reasonable one.

In short, because Petitioner testified on direct examination about selling marijuana, the state appellate court determined that Petitioner opened the door to cross-examination questions about Petitioner's possession and sales of marijuana, including questions about possession and sales of marijuana that had led to an indictment elsewhere. That determination was not contrary to Supreme Court precedent, an unreasonable application of federal law, or an unreasonable determination of facts. Habeas relief is not warranted for Petitioner's Fifth Amendment claim.

## IV. DISPOSITION

For the foregoing reasons, the undersigned **RECOMMENDS** that this action be **DISMISSED**.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report and Recommendation, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report and Recommendation or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or

recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review it *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    **IT IS SO ORDERED**.

                                        /s/ *Chelsey M. Vascura*
                                        CHELSEY M. VASCURA
                                        UNITED STATES MAGISTRATE JUDGE